**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| SHERVETTE RICH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 3:23-cv-716 |
| | : | |
| NEWREZ LLC, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**COMPLAINT**

Plaintiff Shervette Rich, through counsel, files this Complaint against Defendant NewRez LLC and alleges as follows:

**PRELIMINARY STATEMENT**

1.    Managing home loans on a day-to-day basis, "servicers can have a direct and profound impact on borrowers."[1]

2.    Here, NewRez erroneously considered—and *still* considers—Plaintiff's home loan as past due even though Plaintiff timely paid his mortgage each month.

3.    As a consequence, NewRez has erroneously charged Plaintiff countless fees relating to the purported default. NewRez has also threatened to foreclose on Plaintiff's home.

4.    NewRez's inaccurate credit reporting and illegal servicing practices violated the Fair Credit Reporting Act ("FCRA") and the Real Estate Settlement Procedures Act ("RESPA").

5.    The FCRA, 15 U.S.C. §§ 1681–1681x, protects consumers against the furnishing of derogatory and erroneous information by mortgage servicers by imposing further investigative

---

[1] *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10699 (Feb. 14, 2013) (codified at 12 C.F.R. pt 1024).

duties on servicers after the homeowner disputes the inaccuracy with the credit reporting agencies. 15 U.S.C. § 1681s-2(b)(1).

6.      Plaintiff disputed NewRez's inaccurate reporting with the credit reporting agencies.

7.      After NewRez received notification of Plaintiff's disputes, it failed to conduct an adequate investigation or correct its inaccurate reporting.

8.      As a result, Plaintiff alleges FCRA claims for NewRez's failure: to properly investigate his disputes; and to review all relevant information provided by the credit reporting agencies in violation of the FCRA.

9.      Additionally, Plaintiff asserts claims under the RESPA, which aims to promote borrowers' timely access to transparent and accurate mortgage servicing practices.

10.     Because home mortgage servicers are incentivized "to look for opportunities to impose fees on borrowers to enhance revenues,"[2] RESPA requires that servicers investigate and fix disputed errors.

11.     Plaintiff disputed NewRez's servicing of his mortgage by sending Notices of Error directly to NewRez.

12.     In response to Plaintiff's letters, NewRez failed to both investigate Plaintiff's Notices of Error and correct its servicing errors in response.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 12 U.S.C. § 2605(f), and 15 U.S.C. § 1681(p).

---

[2] *Id.*

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff

resides in this District and Division, and a substantial part of the events giving rise to Plaintiff's

claims occurred here.

## PARTIES

15.     Plaintiff Shervette Rich is a natural person residing in this District and Division.

16.     NewRez LLC is a Delaware limited liability company with a principal place of

business in Pennsylvania. At all times relevant, NewRez was a mortgage loan servicing company

governed by RESPA and a "furnisher" governed by the FCRA.

## FACTS

17.     Plaintiff took out a $33,258 loan for his manufactured home in 1996.

18.     NewRez became his mortgage servicer in approximately 2020.

19.     Since NewRez became his mortgage servicer, Plaintiff has been required to pay

between $100-$200 more each month on his $310.46 monthly mortgage payment, due to the

imposition of an escrow for insurance that he did not owe.

20.     Instead, Plaintiff has maintained homeowners' insurance and paid for it separately

from his mortgage each month.

### NewRez's Refusal to Correct Plaintiff's Account

21.     NewRez considered (and still considers) Plaintiff past due on his mortgage account

because—instead of applying Plaintiff's timely payments to his loan—NewRez applied them to

force-placed insurance that Plaintiff did not ask for much less need.

22.     As a consequence, NewRez charged Plaintiff several fees, including late fees, legal

fees, inspection fees, and other third-party fees.

23.     Plaintiff has repeatedly informed NewRez that his account is not past due and that

force-placed insurance was not needed, yet NewRez has repeatedly failed to correct his account.

24.     Plaintiff submitted multiple written Notices of Error to NewRez about its accounting mistakes, including on September 30, 2022; December 15, 2022; March 6, 2023; and August 16, 2023.

25.     All Notices of Error were mailed to the address designated by NewRez for such submissions.

26.     The Notices of Error asked NewRez to correct its accounting and remove all default-related fees and charges because Plaintiff was not behind on his payments.

27.     Plaintiff even attached proofs of payment for his loan as well as proofs of payment for his homeowner's insurance payments.

28.     NewRez nonetheless refused to investigate its errors and completely disregarded Plaintiff's proof.

### *NewRez's Inaccurate Credit Reporting*

29.     Plaintiff's loan was reported as past due on his credit reports.

30.     Plaintiff first disputed his NewRez account with the three major credit reporting agencies—TransUnion, Equifax, and Experian—on September 30, 2022.

31.     Plaintiff attached proof that he made each payment timely.

32.     Plaintiff further explained that NewRez had erroneously charged him for insurance when he separately paid another insurer directly.

33.     Upon information and belief, the credit reporting agencies forwarded Plaintiff's disputes to NewRez.

34.     Despite Plaintiff's disputes and the supporting information attached to the disputes, NewRez failed to conduct an adequate investigation and refused to remove the inaccurate, derogatory information from Plaintiff's credit reports.

35.     Instead, NewRez performed only a cursory review. For example, NewRez did not review Plaintiff's proofs of payment or Plaintiff's proof of insurance to verify that what Plaintiff stated in his dispute was true.

36.     NewRez continued to furnish the inaccurate, derogatory information about Plaintiff's mortgage to the credit bureaus.

37.     Plaintiff next disputed his NewRez account with the three major credit reporting agencies on December 2, 2022.

38.     Again, Plaintiff attached proof that he made each payment timely.

39.     And, as before, Plaintiff explained that NewRez had erroneously charged him for insurance when he separately paid another insurer directly.

40.     Upon information and belief, the credit reporting agencies forwarded Plaintiff's second disputes to NewRez.

41.     Despite Plaintiff's second disputes and the supporting information attached to the disputes, NewRez failed to conduct an adequate investigation and refused to remove the inaccurate, derogatory information from Plaintiff's credit reports.

42.     Instead, NewRez performed only a cursory review. For example, NewRez did not review Plaintiff's proofs of payment or Plaintiff's proof of insurance to verify that what Plaintiff stated in his dispute was true.

43.     NewRez continued to furnish the inaccurate, derogatory information about Plaintiff's mortgage to the credit bureaus.

44.     Plaintiff sent third disputes to the three major credit reporting agencies on August 16, 2023.

45.     Like the prior two disputes, Plaintiff attached proof that he made each payment timely.

46.     Plaintiff also explained that NewRez had erroneously charged him for insurance when he separately paid another insurer directly.

47.     Upon information and belief, the credit reporting agencies forwarded Plaintiff's third disputes to NewRez.

48.     Despite Plaintiff's third disputes and the supporting information attached to the disputes, NewRez failed to conduct an adequate investigation and refused to remove the inaccurate, derogatory information from Plaintiff's credit reports.

49.     Instead, NewRez performed only a cursory review. For example, NewRez did not review Plaintiff's proofs of payment or Plaintiff's proof of insurance to verify that what Plaintiff stated in his dispute was true.

50.     NewRez continued to furnish the inaccurate, derogatory information about Plaintiff's mortgage to the credit bureaus.

51.     As a result of Defendants' conduct, Plaintiff has suffered significant actual damages, including a decreased credit score, credit denials, and emotional distress.

### *NewRez's FCRA Violations Were Willful*

52.     NewRez's processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA.

53.     In fact, NewRez's acted in accordance with NewRez's intended procedures.

54.     In addition, NewRez prioritizes processing disputes quickly over making sure that the disputes are investigated thoroughly and accurately.

55.     In addition, the willfulness of NewRez's FCRA violations can be established by, for example:

- Congress enacted the FCRA in 1970, and NewRez has had several years to become compliant;

- NewRez is a company with access to legal advice through its own general counsel and outside litigation counsel. Yet there is not contemporaneous evidence that NewRez determined that its conduct was lawful;

- NewRez knew, or had reason to know, that its conduct was inconsistent with the FCRA's plain language, regulatory guidance, and the relevant case law;

- NewRez voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

- NewRez's FCRA violations were repeated and systematic;

- NewRez had substantial documentation available to it that apprised it of its duties under the FCRA but still chose not to comply with the statute.

### COUNT ONE:
### Violation of RESPA, 12 U.S.C. § 2605(e)(2), Reg. X, 12 C.F.R. § 1024.35(e)

56.     Plaintiff incorporates the preceding allegations.

57.     The mortgage obligation at issue is a "federally related mortgage loan" under RESPA, 12 U.S.C. § 2602(1), in that: (1) it is secured by a first lien on residential real property designed for the occupancy of one to four families and the proceeds of it were used to purchase the secured property, and it was made by a lender whose deposits or accounts are insured by the FDIC or who is regulated by the Office of the Comptroller of the Currency; and (2) it was intended to be sold by the originating lender to the Federal National Mortgage Association.

58.     Plaintiff is a borrower of this mortgage and NewRez is the servicer of the mortgage in accordance with the meaning of 12 U.S.C. § 2605(e).

59.     Plaintiff's letters each constituted a Notice of Error under 12 C.F.R. § 1024.35 in that Plaintiff notified NewRez that he had paid every month under the agreement and that he should not be considered late on the mortgage.

60.     Plaintiff's letter was sent to the address designated by NewRez for Notices of Error.

61.     Upon receipt of the Notices of Error, NewRez was required to conduct a investigation of the matters raised in the Notices of Error. *See* Reg. X, 12 C.F.R. § 1024.35(e).

62.     Upon information and belief, NewRez did not conduct an investigation under Reg. X, 12 C.F.R. § 1024.35(e). Had an investigation occurred, NewRez would have discovered that Plaintiff was not behind on his mortgage and that NewRez had misapplied payments to escrow.

63.     NewRez's failure to comply with its obligations with regard to Plaintiff's Notices of Error was part of a pattern and practice of noncompliance with its obligations under 12 C.F.R. § 1024.35.

64.     NewRez's continued refusal to recognize Plaintiff's timely payments violates 12 U.S.C. § 2605(e)(2)(a).

65.     Because of NewRez's conduct, Plaintiff suffered concrete and particularized harm, including the incurring of unnecessary fees and interest on his account and emotional distress, including stress and aggravation.

66.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from NewRez for its violations of 12 U.S.C. § 2605(e)(2)(a) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

**COUNT TWO:**
**Violation of FCRA, 15 U.S.C. §1681s-2(b)(1)(A)**

67.     Plaintiff incorporates the preceding allegations.

8

68.     On one or more occasion within the past two years, by example only and without limitation, NewRez violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to properly investigate Plaintiff's disputes.

69.     When Plaintiff disputed his account with the credit bureaus, NewRez used a dispute system named "e-Oscar," which has been adopted by the credit reporting agencies and their furnisher customers (such as NewRez). E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

70.     When a credit reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

71.     Upon information and belief, the ACDV form is how NewRez has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

72.     Upon information and belief, Experian, Equifax, and Trans Union each forwarded Plaintiff's disputes via an ACDV to NewRez.

73.     NewRez understood the nature of Plaintiff's disputes when it received the ACDV forms.

74.     Upon information and belief, when NewRez received the ACDV form containing Plaintiff's disputes, NewRez followed a standard and systematically unlawful process where NewRez only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

75.     Upon information and belief, when NewRez receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether the information already in its computer system is itself accurate.

76.     As a result of NewRez's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered concrete and particularized harm, including loss of credit, damage to reputation, embarrassment, humiliation, stress, and other emotional distress.

77.     NewRez's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, NewRez was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

78.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from NewRez in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT THREE:**
**Violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)**

79.     Plaintiff incorporates the preceding allegations.

80.     On one or more occasion within the past two years, by example only and without limitation, NewRez violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

81.     As Plaintiff detailed in the previous Count, NewRez has elected to use the e-Oscar system for its FCRA disputes received through the credit reporting agencies, including for Experian, Equifax, and Trans Union.

82.     When it received the ACDV forms from the credit reporting agencies, NewRez did not review any of the documentation that Plaintiff attached to his disputes, which demonstrated that he had paid his mortgage in full and on time.

83.     Had NewRez reviewed these documents, which included proof of Plaintiff's payments, then it would have known that its previous reporting was incorrect and needed to be updated.

84.     NewRez also failed to consider the other information that the consumer reporting agencies provided regarding Plaintiff's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

85.     NewRez is aware of the meaning of the several dispute codes used by the credit reporting agencies in e-Oscar.

86.     NewRez does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the credit reporting agencies.

87.     NewRez understood Mr. Plaintiff's disputes and that they claimed the information was inaccurate.

88.     As a result of NewRez's violations of 15 U.S.C. § 1681-2(b)(1)(B), Plaintiff suffered concrete and particularized harm, including, but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

89.     NewRez's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

90.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from NewRez in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT FOUR:
### VIOLATION OF FCRA, 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D)

91.     Plaintiff incorporates the preceding allegations.

92.     On one or more occasion within the past two years, NewRez violated 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D) by publishing its representations within Plaintiff's credit files without also including any notation at all that the account was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

93.     For example, NewRez failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field of at least one of the ACDV dispute forms when it responded to the credit reporting agencies, which would have indicated that the account was disputed.

94.     In addition, NewRez failed to add any other notation that Plaintiff's account was disputed.

95.     Furthermore, NewRez knew that Plaintiff disputed the subject account through his direct and written disputes letters to the credit reporting agencies.

96.     Plaintiff's disputes were bona fide as the account reported inaccurate derogatory information.

97.     Because of NewRez's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Plaintiff suffered concrete and particularized harm, including but not limited to: credit denial, a reduced credit score, reputational damage, embarrassment, humiliation, and other emotional distress.

98.     NewRez's violations were willful, rendering it liable for punitive damages under 15 U.S.C. § 1681n. In the alternative, NewRez was negligent, entitling Plaintiff to recover against it under 15 U.S.C. § 1681o.

99.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from NewRez under 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff moves for actual, statutory, and punitive damages; attorneys' fees and costs; for prejudgment and post-judgment interest at the legal rate; and any other relief the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

**SHERVETTE RICH**

*/s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB # 93738
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*